# INDEX OF APPENDICIES

**Appendix A:** Motion to Remove Named Plaintiff. / Adding Name.

**Appendix B:** Letters to Director Ashbel T. Wall.

**Appendix C:** Memorandum To Stop Praying.

**Appendix D:** Consent Decree.

**Appendix E:** DOC Religous Programs Policy.

**Appendix F:** DOC Diet Policy.

**Appendix G:** Nine Signed Affidavits in Support of Complaint.

**Appendix H:** Internal Memo.

**Appendix I:** Menu.

**Appendix J:** DOC Menu Planning Policy.

**APPENDIX A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

Islamic Sunni Ummah
(Muslim Brotherhood)
Maximum Security

Corey Day, Juan Evora, et al.

Vs. Civil Action No. 08-094ML

Ashbel T. Wall, et al.

MOTION TO REMOVE NAMED PLAINTIFF
FROM CLASS ACTION CIVIL COMPLAINT

No comes the Plaintiff, Corey A. Day, in a motion to remove himself from the Class Action Civil Complaint under Civil Action No. **08-094ML.** The plaintiff does not wish to proceed foward as a member of this Class Action Complaint, and he respectfully requests this Honorable Court that he be removed from said complaint immediately.

Respectfully Submitted,

Corey Day, ~~Pro Se~~
P.O. Box 8273
Cranston, RI 02920

APPENDIX A

COVER LETTER

To: Clerk of Court

United States District Court

For the District of Rhode Island

One Exchange Terrace

Court House Building 119

Providence, RI 02903

Date: 5/8/08

From: Juan Evora, et al.

P.O. Box 8273

Cranston, R.I. 02920-0273

RE: Juan Evora, et al., vs. Ashbel T. Wall, et al., C.A.No. 08-094 ML.

Dear Clerk:

Please file the within motion with the Honorable Court.

Thank You!

Respectfully Submitted,

Juan Evora

Juan Evora, et al.
P.O. Box 8273
Cranston, R.I. 02920-0273

Corey Day
P.O. Box 8273
Cranston, RI 02920

APPENDIX A

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

Juan Evora, et al., Plaintiff

v. Civil Action Number: 08-094 ML

Ashbel T. Wall, et al., Defendant

MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

**Plaintiffs**, Juan Evora, et al., pursuant to Rules 15(a) and 19(a), Fed.R.Civ.P., requests leave to file an amended complaint adding a party.

1. The plaintiffs in their original complaint named **Corey Day** as a Plaintiff.

2. Since the filing of the complaint, Correctional Officers have launched an endless campaign against the members of this class and the Muslim inmate population.

3. Former Plaintiff, Corey Day, had priveledged legal material for this case seized, read, examined, and subsequently deystroyed by Corrections staff. He was threatened with punitive segregation. His cell was repeatedly search and deystroyed. Corrections staff interogated him on a repeated basis, sometimes lasting over an hour per session, demanding to know about the current law suit. They yelled at him, seized his legal meterial, and continue to this day, to launch derogatory insults and

remarks at Day, due to his involvement with this case. Day took his complaint to the Warden who dismissed his concerns with the waive of a hand, calling it Hearsay.

4. Former Plaintiff Corey Day filed a motion with the court , on 4/25/2008, to remove himself from the class action civil complaint. This was done in an effort to stave off the endless attacks that Corrections staff perpetuated against him, which were escalating to the point where Day feared for his safetey, well-being, and basic liberties.

5. Day subsequently filed a lawsuit on his own behalf, addressing the same facts of the former complaint. This law-suit is unbeknownst to the Corrections staff at this time. (See: **Corey Day v. Ashbel T. Wall.**).

6. Former Plaintiff Day does not have the resources to continue in that subsequent complaint. He wishes to be returned as a Plaintiff to the former class action civil suit to which he belonged (**See: Juan Evora, et al. vs. Ashbel T. Wall, et al., C.A.No.08-094ML**), in hope that the Honorable Court will protect him and all the members of this class and the Muslim inmate population through the means of an immediate Temporary Restraing Order and Preliminary Injunction, to prevent further harm and continued infringement of all of the parties rights and basic human wellfare.

7. Former Plaintiff Day's actions in removing himself from the class action civil complaint were clearly done under duress and a genuine fear of harm from Corrections staff.

The ends of justice would best be served by granting leave to allow former Plaintiff Corey Day to be renamed as a member of this class action civil complaint (No.08-094-ML).

8. The court should grant freely to amend a complaint. **Foman v. Davis, 371 U.S. 178, 182 (1962).**

**WHEREFORE** Plaintiffs pray this Honorable Court grant leave to amend the complaint and add Corey Day as a named Plaintiff to this class action civil complaint.

Respectfully Submitted,

Corey Day

Juan Evora

Juan Evora, et al.
P.O. Box 8273
Cranston, RI 02920

Dated: 5/8/08

**CERTIFICATION OF SERVICE**
**28 U.S.C.A SECTION 1746**

Plaintiffs Juan Evora, et al., swear under the penalty of perjury pursuant to 28USC1746, that he did in fact mail a true copy and two photo copies of the Motion for Leave to File An Amended Complaint, on 5/8/08, via United States Postal Service.

Corey Day
P.O. Box 8273
Cranston, RI 02920

Juan Evora

**APPENDIX B**

Corey A. Day, ID#127574
Maximum Security Facility
P.O.Box 8273
Cranston, RI 02920-0273

April 16, 2008

Ashbel T. Wall, Director
Rhode Island Department of Corrections
40 Howard Ave.
Cranston, RI 02920

RE: Code of Ethics and Conduct violations against the Sunni Muslim population.

Dear Director Wall:

This letter is an informal grievance to address certain civil rights abuses that are taking place in the Maximum Security Facility. Such abuses are being done at the hands of the Maximum Security Administrators, and the issues inevitably fall under your respective jurisdiction and oversight.

The Muslim inmates of the Maximum Security Facility have been denied the right to pray in the prison yard as the result of a direct order from Warden Weeden and Deputy Warden Kettle. This amounts to a clear violation of First and Fourteenth Amendment rights under the Federal Constitution. Likewise, denying the Muslim inmates the right to pray in the prison yard is in clear violation of the Rhode Island Department of Correction's Religous Programs policy, which reads in part: **"All inmates**

**have the right to the free excercise of their religous beliefs and the liberty of worship according to the dictates of their consciences."** Furthermore, DOC Policy 3.14-1, Code of Ethics, reads: **"Staff shall protects the civil and legal rights of each member of the offender population."**

Whenever two or more Muslims are in one place together, it is obligatory for them to establish congregational prayer. It is not simply something that is optional as it may be in other religons. The failure to perform the prayer in congregation is a major act of transgression in the religon of Islam. Muslims are required to pray five (5) times a day in the morning, noon, afternoon, evening, and night. Given this, it is only during the 2:30p.m. and 7:30p.m. recreation periods, that Muslims in the yard, would need to pray a brief five minute prayer.

It is understood that any large group of inmates gathered in one place, may pose a security risk. However, if by chance, there was more than a handful of Muslims in the yard, there would be no harm in us splitting up into groups of three to five, or whatever the Department may feel comfortable with. We have even proposed to the administration that we be allowed to pray right in front of the guard-shack in the yard, just in case security would somehow still be an issue.

Other groups of inmates are allowed to congregate together and excercise, play cards, and even use aluminum baseball bats and other objects of similar import, without being labeled

APPENDIX B

as security risks. So it is difficult to concieve how three or four Muslims performing a five minute prayer, right in front of the guard-shack, could in any way constitute a greater security risk than twenty of more inmates running around with aluminum baseball bats.

We agree and respect the Department's need and concerns for security, however, this must be balanced against the rights of the inmate population "to the free excercise of their religous beliefs and the liberty of worship according to the dictates of their consciences"(RIDOC Religous Programs Policy 26.01-2).

No one would disagree that the Muslim community here in Maximum Security has never caused a breach of security or ever engaged in any type of behavior that has threatened the safetey of staff or the inmate population. We have had an excellent relationship with the administration over the years, and would hope to continue the same in the years ahead. The DOC has always been kind and considerate in resolving various issues with us in the past, and it can only be hoped that the same spirit of cooperation will prevail as we seek a fair resolution of the current matter.

We thank you for your help in this matter and look foward to hearing from you soon.

**APPENDIX B**

Respectfully Yours,

Corey A. Day
ID#127574
Maximum Security

**Certification of Service**
28 USC 1746

I, Corey A. Day, hereby certify that on, 4/17/08, I sent a true copy of the enclosed letter to Ashbel T. Wall, at 40 Howard Ave., Cranston, RI 02920. CC File: Imam Abdul Hameed, Roberta Richman, Warden Weeden, Warden Kettle, Michael B. Grant.

To: Ashbel T. Wall, Director
Rhode Island Department of Corrections
40 Howard Avenue
Cranston, R.I. 02920

From: Juan G. Evora (Abdul-Oadeer A.M. Evora)
Maximum Security Facility
P.O. Box 8273
Cranston, R.I. 02920

Date: April 16, 2008

**RE: Code of Ethics and Conduct violations against Sunni Muslims within Maximum Security Facility, and Constitutional Violations of The United States Constitution.**

Dear Director Wall:

This letter is written to address the unconstitutional Department of Corrections policy of Sunni Muslims of the Islamic Faith being denied the first amendment right to openly express, practice, worship Allah, and practice the Islamic Faith in incompliance with Qur'an and Fiqh-us-Sunnah.

On April 15, 2008 Warden Weeden in violation of the Rhode Island and United States Constitutions, "has stated all Muslims in Maximum Security Facility are not allowed to pray outside of their cells. A clear violation of Allah's decree within the Qur'an for Muslims to pray five times a day at the fixed times. Muslims are forced to give up liberty and remain in cells to worship Allah or not pray at the fixed time of pray, clearly a first amendment violation.

The First and Fourteenth Amendments are clearly violated by Warden Weeden and Deputy Kettle, and DOC Policies/Code of Ethics. April 15, 2008 Warden Weeden went as far as to state he wanted all Muslims to stand up when praying like all other religious groups in Maximum Security Facility. Muslims (Sunni Muslims) prostrate as did all the Prophets from Noah up to Muhammad (PBUH) had done. So it is clear here the code of ethics and constitutional violations of Warden Weeden, et al. are unjust.

The Code of Ethics and Conduct violations all started with the Correctional Officer of the Building #3 (Reading Library) writing false and misleading reports stating, "Muslims are taking over the reading library etc." In violation of **3.14-1 DOC Code of Ethics page 11 Of 13, g. DISHONESTY (2) Providing false or misleading Statements or representations, either verbal or written, on any official forms, reports, logs, affidavits, or other documents.** The Staff are in violation of **3.14-1 DOC Code of Ethics page 11 Of 13, f. Harassment (1)Language, written communication, or gestures which are intended to ridicule, taunt, embarass, insult, or provoke a fellow employee, staff member, or member of the offender population, for reasons including, but not limited to, race, ethnicity, national origin, religon, gender, age, handicap, or sexual orientation. Violations or 3.14-1 DOC Code of Ethics, page 9 of 13, a. Conduct Unbecoming a Correctional Employee (3) Abuse of position for personal gain or benefit.** Due to staff being racist against Muslims who have not violated DOC Rules or Policies,

caused the above abuses in violation of **18 USCA 241 and 242**, and the **Rhode Island** and **United States Constitutions.** The Sunni Muslims have not caused any security problems while praying, nor are they a gang. They read and write Arabic, study the Holy Qur'an, and pray practicing the Islamic Faith, which is their **First Amendment Right** protected by the **Fourteenth Amendment** of the **Rhode Island Constitution** and **United States Constitution.** Not all staff are against the practicing Sunni Muslims, yet you do have the bad mixed with the good.

Director Wall, **Rhode Island General Laws §42-56-10(v), Powers of the Director; and RIGL §36-14-1, Declaration of Policy; and RIGL §36-14-5, Code of Ethics for R.I. State Employess,** clearly gives you as the Director the powers to protect the civil and legal rights of the Sunni Muslims within the Rhode Island Department of Corrections. In full compliance with **3.14-1 DOC Code of Ethics, page 6 of 13, 4. Relationship with Offenders;** a. **Civil Rights of Offenders (1) Staff shall protect the civil and legal rights of each member of the Offender population., (2) The actions and judgements of staff in the exercise of duties which bring them into contact with the offender population shall not be influenced by personal feelings, attitudes, or prejudices toward an individual or group., (3) In dealing with or discussing the offender population, staff are forbidden to make derogatory remarks based on race, ethnicity, national origin, religon, gender, age, physical handicap, or sexual orientation., (4) Staff shall be firm, fair, and consistent in their conduct toward the offender population.**

Sir, it is transparent the above **Code of Ethics** violations are also **First** and **Fourteenth Amendment** violations of **Rhode Island** and **United States Constitutions.** Also violations of **26.01-2 DOC; Religous Programs and Services; Repeals 26.01-1. DOC 5.06.02-1, 5.06.03-1. Policy 26.01-2 DOC page 7 of 11, dated: 01/22/03, (5) Religous Activities.(see attached affidavit, prior use before Honorable Court), and attached pages of the Policy of Code of Ethics 3.14-1 DOC pages 1, 6, 9, and 11 of 13.**

Sir, you speak to the public and media about rehabilitation and programs. Here, the Islamic Faith has had a great rate of helping to rehabilitate all offenders of all different backgrounds **and ethnicities. Muslims** educate one another in all of the traditional studies, including English, Mathematics, History, and even Science. We even teach Arabic and almost every Muslim here can read and write in the Arabic language. Education is a command from Allah (God) upon all Muslims, and we dedicate ourselves to helping one another in this endeavor. Yet, these efforts of ours to rehabilitate ourselves is perpetually hampered by DOC staff. Where you say one thing to the public and the media, your staff go completely against rehabilitation.

What harm is there in praying to Allah (God)? What security

threat is praying to Allah (God)? Why should Muslims not be allowed to congregate together in the library or in the yard and study and educate themselves? What harm is there in Muslims adhering to the their Faith which commands a degree of personal responsibility and accountability upon each person to better themselves and be more than just some convict?

Please, Director Wall, we ask that you speak with Imam Abdul Hameed, Roberta Richman, Warden Weeden, and all other DOC staff, who have the ability to bring about a real change for the better, so that the Constitutional violations and Code of Ethics violations, etc., can be respectfully corrected.

Wherefore, I respectfully implore you that I be allowed to pray outside of my cell, not causing security violations, and to practice my Islamic Faith openly. I am American, born in the United States of America; the United States Constitution applies to incarcerated inmates also. So please help to correct the First and Fourteenth Amendment violations, not only within Maximum Security, but also the whole Department of Corrections.

Respectfull Submitted,

Juan G. Evora
Maximum Security Facility

## Certification of Service
28 USC 1746

I, Juan G. Evora, hereby certify that on, 4/17/08,
I sent a true copy of the enclosed letter to Ashbel T. Wall, at 40 Howard Ave., Cranston, RI 02920. CC File: Imam Abdul Hameed, Roberta Richman, Warden Weeden, Warden Kettle, Michael B. Grant.

APPENDIX C

# STATE of RHODE ISLAND and PROVIDENCE PLANTATIONS
## DEPARTMENT of CORRECTIONS
## INTER - OFFICE MEMORANDUM

TO: C. Day ID# 127574 DATE: April 10, 2008
BLDG/CELL: Maximum Security P2-09

FROM: Matthew Kettle, Deputy Warden Dep MK
DEPT: Maximum Security

**SUBJECT**: Unauthorized Meeting/Assembly during Recreation

You were observed participating in an unauthorized meeting/assembly during the afternoon recreation period on 4/9/08 at approximately 3:00 pm. You were identified were identified as being part of this large group. This behavior presents a legitimate security concern for this institution and may be a violation of the inmate disciplinary code. Although all inmates have the right to the free exercise of their religious beliefs and the liberty of worship according to the dictates of their consciences, the exercise of this right may be restricted for security reasons. Any similar behavior in the future will result in disciplinary action.

C.C. File

* Note: The "assembly" was nothing more than prayer.

APPENDIX D

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

| | | |
|---|---|---|
| LEONARD JEFFERSON, KEVIN MINEAR, ROBERT DICENZO, MICHAEL FEROLA, GARY DOYLE DAVID SIMS, JAMES E. McPARLIN, GEORGE E. HOSTETLER, WESLEY STINSON, JANE DEMAS, AND THE AMERICAN CIVIL LIBERTIES UNION-RHODE ISLAND AFFILIATE, | : | |
| Plaintiffs | : | |
| v. | : | C.A. No. 85-5003 |
| JOHN J. MORAN, individually and in his capacity as Director, Department of Corrections, State of Rhode Island, | : | |
| Defendant | : | |

CONSENT DECREE

1. The Defendant, individually and in his capacity as Director, Department of Corrections, State of Rhode Island, acknowledges that the Department is an agency within the meaning of R.I. Gen. Laws § 42-35-1(a) and that the Department is subject to Chapter 35 of Title 42 of the R.I. General Laws, as amended (the "APA").

2. Defendant and the Department of Corrections agree to comply with the provisions of the "APA" with respect to the adoption, amendment or repeal of any rule not specifically exempted under R.I. Gen. Laws § 42-35-1(g).

APPENDIX D

3. Defendant and the Department have heretofore promulgated certain operational memoranda which the Defendant and the Department concede "affect private rights or procedures available to the public" and are not exempt from the statutory definition of "rule" under the aforesaid § 42-35-1(g).

4. These memoranda were promulgated in the areas of visitation, mail, clergy and religious services, and investigation of potential employees. Within 120 days from the date of entry of this Consent Decree, the Defendant and the Department shall promulgate rules pursuant to the "APA" in said areas previously covered by Operational Memoranda Nos. 5.17.02-2, 5.13.10-1, 5.17.03-1, 5.06.03, 5.06.02, 5.06.01, and 7.04.03. Said promulgations shall serve to repeal and replace the operational memoranda heretofore cited. Until such time, these memoranda will remain in full force and effect and be binding upon all concerned.

5. With respect to R.I. Gen. Laws § 42-35-3(2), the Defendant and the Department further acknowledge that the Plaintiff, American Civil Liberties Union-Rhode Island Affiliate, is an association having not less than twenty-five members.

6. Within ninety (90) days from the date of entry of this Consent Decree, the Defendant and the Department shall, pursuant to R.I. Gen. Laws § 42-35-2(a)(1) and (2) adopt as a rule a description of the Department's organization and adopt

APPENDIX D

rules of practice. Also within the aforesaid time frame, the Defendant and the Department shall make available for public inspection all information required under R.I. Gen. Laws § 42-35-2(a)(3) and (4) and not specifically exempted § 42-35-1(g). In addition, the Defendant and the Department shall continue to make such materials available in the various prison libraries at the Adult Correctional Institution.

7. The parties hereby acknowledge and agree that it is not always reasonable to have oral hearings within the confines of the Adult Correctional Institutions, and that incarcerated prisoners have no right to leave the Adult Correctional Institutions in order to attend oral hearings under the "APA".

8. Plaintiffs and Plaintiff's attorneys waive any claim to attorney's fees or costs in this case, and no costs shall be awarded to any party."

PER ORDER:

[signature] Clerk 12/18/85

ENTER:

[signature]
December 12, 1985

APPENDIX D

AGREED TO:

Plaintiffs,

By their Attorneys,

Douglas A. Giron

Normand G. Benoit
Douglas A. Giron
Rhode Island American
Civil Liberties Union
One Old Stone Square
Providence, Rhode Island 02903

Defendant,

By his Attorney,

Anthony A. Cipriano

Anthony A. Cipriano
Legal Counsel
R.I. Department of Corrections
75 Howard Avenue
Cranston, Rhode Island 02920



TOTAL P.05

Organizations; and/or Volunteers, or its successor). The institutional Chaplains are responsible for developing, maintaining (on a monthly basis) and issuing, through the Assistant Director of Rehabilitative Services, the schedule of religious services throughout the facilities and a roster of individuals authorized to conduct those services.

5. Religious Activities

Each accredited religious organization is encouraged to plan its own activities using the appropriate community and institutional resources. Religious activities include, but are not necessarily limited to: worship services, religious instruction, reading and study, religious discussion groups, and pastoral counseling.

6. Special Diets

a. The inmate menu is written to accommodate the diet restrictions of Jewish and Muslim inmates. Requests for additional accommodations based on religion should be initiated by interested inmates and submitted to the Assistant Director of Rehabilitative Services' office.

b. Where religious holidays specify particular dietary requirements (e.g., Passover, Month of Ramadan), the Associate Director of Food Services, in consultation with the appropriate institutional Chaplain, makes special arrangements so that inmates are able to adhere to their religious beliefs, providing these special arrangements are not disruptive to the operation of the facility.

7. Space for Services

Accredited religious organizations are provided a place for services. Based on security needs, the size of groups at services may be restricted if a determination is made of such a need by the Warden or designee.

8. Scheduling

To keep inmates and staff informed of religious program opportunities, institutional Chaplains post religious program and service schedules in appropriate housing units. Institutional Chaplains schedule religious programs and services in conjunction with the Wardens or designees.

1

APPENDIX F

# RHODE ISLAND DEPARTMENT OF CORRECTIONS POLICY AND PROCEDURE

| | | | |
|---|---|---|---|
| | **POLICY NUMBER:** 18.45-1 DOC | **EFFECTIVE DATE:** 10/13/03 | **PAGE 1 OF 5** |
| | **REPEALS:** 18.45 DOC 16.04 DOC | **DIRECTOR:** Please use BLUE ink. | |
| **SECTION:** HEALTH CARE SERVICES | | **SUBJECT:** DIET | |
| **AUTHORITY:** Rhode Island General Laws (RIGL) § 42-56-10 (22), Powers of the director | | | |
| **REFERENCES:** NCCHC standards J-45, Diet; P-47 Diet; ACA standard 3-4297 M, Dietary Allowances; 3-4299, Special Diets; National Research Council's Recommended Dietary Allowances and the Dietary Guidelines for Americans (U.S. Dept. of Agriculture, U.S. Dept. of Health and Human Services) | | | |
| **INMATE / PUBLIC ACCESS?** | X YES | | |
| **AVAILABLE IN SPANISH?** | X NO | | |

I. **PURPOSE:**

To ensure adequate diets that incorporate the principles expressed in the United States Department of Agriculture/Department of Health and Human Services' food guidelines and meet the current recommended dietary allowances for specific age groups are supplied to all Rhode Island Department of Corrections (RIDOC) incarcerated offenders.

II. **POLICY:**

A. RIDOC provides all incarcerated offenders in its custody with adequate diets.

B. If needed, medical and/or dental diets are prepared from specially developed menus and/or in accordance with approved diet manuals and served to offenders according to orders of the treating physician/dentist and/or as directed by the Medical Program Director or designee.

**APPENDIX G: NINE SIGNED AFFIDAVITS IN SUPPORT OF COMPLAINT**

"AFFIDAVIT IN SUPPORT OF CIVIL ACTION COMPLAINT"

I, Juan G. Evora, Plaintiff hereby makes the following statement of facts under the penalty of perjury under 28 USCA 1746, both federal and state laws. I swear as follows to the best of my knowledge:

I am a practicing Muslim and am currently in the Maximum Security Facility, in Cranston, Rhode Island.

That since my incarceration within the Rhode Island Department of Corrections in January of 2004, I have been denied the constitutional right to free exercise of my religion, and denied equal protection of the constitutional fourteenth amendment right and laws.

That the Defendants' have violated my civil and legal rights along with the whole Islamic Sunni Ummah. The Defendants' violated the first, eighth and fourteenth amendments of the United States Constitution and Rhode Island Constitution.

The first amendment of the United States and Rhode Island Constitution states, freedom of religion, freedom to practice religion, and free exercise of religion. These constitutional rights have been violated by the named Defendants' et al.

The Defendants' are in violation of their own policies and the **CONSENT DECREE**, the Defendants' consented to in: **Jefferson Vs. Moran, C.A. No. 85-5003, entered 12/12/85** amending state statutory law... R.I.G.L. 42-53-3 of the administrative procedures act. By the unlawful promugation of policies mentioned that went before the Providence Superior Court Judge Susan McGuirl and Judge Gilbert V. Indeglia, also well aware was Judge Rodgers, and the **CODE OF ETHICS** 3.14-1 R.I.D.O.C. Policy on State **Employees**, and the 26.-1-2 DOC; **RELIGIOUS PROGRAMS and SERVICES; Repeals 26.01-1 DOC 5.06.02-1, 5.06.03-1. Policy 26.01-2 DOC page 7 of 11 dated 01/22/03, (5.) RELIGIOUS ACTIVITIES** each accredited religious organization is

encouraged to plan its own activities using the appropriate community and institutional resources. Religious activities include, but are not necessarily limited to: worship services, religious instruction, reading and study, religious discussion groups, and pastoral counseling.

**SPECIAL DIETS** a. The inmate menu is written to accommodate the diet restrictions of Jewish and Muslim inmates. Request for additional accommodations based on religion should be initiated by interested inmates and submitted to the Assistant Director of Rehabilitative Services (PROGRAMS) office. The Defendants' do not honor this request fully, as will be stated within.

Defendants' violated and are still violating the **CODE OF ETHICS 3.14-1 DOC page 6 Of 13... (4). RELATIONSHIPS WITH OFFENDES** ... a. **CIVIL RIGHTS OF OFFENDERS** (1) Staff shall protect the civil and legal rights of each member of the offender population. This is not done by Defendants' as will be fully stated within... (2) The actions and judgments of staff in the exercise of duties which bring them in contact with the offender population shall not be influenced by personal feelings, attitudes, or prejudice towards an individual or group. Many of the Defendants' are racist against the Muslim Ummah (Muslim inmates) population, they belittle, and utilize reprisal tactics treating Muslims as terrorist. Daily reprisal tactics are utilized against the Muslim Sunni Ummah for no other reason then the fact, Muslim following the Holy Quran and Fiqh-us-Sunnah.

Because I am a practicing Sunni Muslim, I am being put through cruel and unusual punishment in violation of the United States Constitution and Rhode Island Constitution, that being the violation of my first amendment right to religious diet, which in turn led up to the eighth amendment violation and fourteenth amend-

ment of the United States Constitution and Rhode Island Constitution;

I am not being giving the proper dietary requirements, and the medical records of weight loss will prove this, and exhibits that are submitted along with the civil complaint (class action). Through the hardships, reprisal tactics, I remain striving in the **Deen (ISLAM)** and practicing my Islamic Faith. All in compliance with the **FIVE PILLARS of ISLAM.** I pray to be granted the right to pray **free exercise of religion** in congragation which is in compliance with Qur'an and Sunnah (Islamic Law).

In compliance to the Decree of Allah (SWT) I strive to adhere to the Holy Qur'an and Fiqh-us-Sunnah (Fiqh: Islamic Jurisprudence, and, Sunnah: The legal way or ways, orders, acts of worship and statements of the Prophet (Muhammad (SAW) ), that have become models to be followed by the Muslims. To strive for complete and full knowledge of Tauhid (Islamic Monotheism): Tauhid means declaring Allah to be the only God. It has three aspects: (A) Oneness of the Lordship of Allah; Tauhid-ar-Rubiyyah: To believe that there is only one Lord for all the universe and He is its Creator, Organizer, Planner, Sustainer, and the Giver of security, and that is Allah. (B) Oneness of the worship of Allah; Tauhid-al-Uluhiyyah: To believe that none has the right to be worshipped [e.g. praying, invoking, asking for help (from the unseen), swearing, slaughtering sacrifices, giving charity, fasting, pilgrimage, etc.], but Allah. (C) Oneness of the Names and the Qualities of Allah; Tauhid-al-Asma was-Sifat: To believe that: (i) we must not name or qualify Allah except with what He or His Messenger (SAW) has named or qualified Him; (ii) none can be named or qualified with the Names or Qualifications of Allah; e.g. Al-Karim; (iii) we must believe in

all the qualities of Allah which Allah has stated in His Book (the Holy Qur'an) or mentioned through His Messenger Muhammad (SAW) without changing their meaning or ignoring them completely or twisting the meanings or giving resemblance to any created things; e.g. Allah is present over His Throne and mentioned in the Qur'an verse 20:5 "The Most Gracious (i.e. Allah) rose over (Istawa) the (Mighty) Throne" over the seventh heaven; and He comes down over the first (nearest) heaven (to us) during the day of 'Arafah (Hajj, i.e. 9th Dhul-Hijjah) and also during the last third part of the night, as mentioned by the Prophet Muhammad (SAW), but He is with us by His Knowledge, not by His Personal Self (Bi-Dhatihi), "there is nothing like unto Him, and He is the All-Hearer, the All-Seer." (The Qur'an verse 42:11).

This Noble Verse proves the quality of hearing and the quality of sight for Allah without likening it (or giving resemblance) to others; and likewise He also says: "To one whom I have created with Both My Hands." (V. 38:75); and He also says: "The Hand of Allah is over their hands." (V. 48:10). This confirms two Hands for Allah, but there is no similarity for them.

This is the Faith of all true believers (Muslims), and was the Faith of all the Prophets of Allah from Nuh (Noah), Ibrahim (Abraham), Musa (Moses) and Isa (Jesus) till the last of the Prophets, Muhammad (SAW). It is not like as some people think that Allah is present everywhere, here, there and even inside the breast of men. These three aspects of Tauhid are included in the meaning of La-ilaha ill-Allah (none has the right to be worshipped but Allah.

It is also essential to follow Allah's Messenger Muhammad (SAW) Wajub Al-Ittiba' and it is a part of Tauhid-al-Uluhiyyah.

this is included in the meaning: "I testify that Muhammad (SAW) is the Messenger of Allah" and this means, "None has the right to be followed after Allah's Book (the Qur'an), but Allah's Messenger Muhammad (SAW). [See the Qur'an (V.59:7) and (V.3:31)].

I aver that the Defendants treatment of the Muslims constitutional rights, has led to constitutional violations of the first, Eighth, and Fourteenth Amendments of both the United States and Rhode island Constitutions:

1.) The First Amend. entitles all citizens to freedom of religion, free exercise of religion, the right to practice and worship in accordance with religious beliefs (Islamic Faith).

2.) The Eighth Amend. entitles all citizens to be free from cruel and unusual punihment. The Defendants are in the routine habit of practice of causing Muslim inmates hardship, punishments for just praying, reading, or studying Arabic Holy Text of Al-Qur'an the Book of Allah, threats of segregation, cells being trashed, or to be belittled, even personal harm to physical body, and the food amount served to the Muslim population is cruel and unusual punishment, and unhumane treatment. [See exhibit- that is attached of food dietary list and meals documented].

I, Juan Evora, I.D.# 75069 , hereby swear to the above affidavit under the penalty of perjury under both Federal and State laws to the best of my knowledge under 28 USCA 1746.

Date: 2/22/08

Juan H. Evora
Signed under the penalty of perjury
[28 USCA 1746]

"AFFIDAVIT IN SUPPORT OF CIVIL ACTION COMPLAINT"

I, Tracey Barros, inmate of the Rhode Island Department of Corrections, Maximum Security Facility, in Cranston, R.I., of Providence County, hereby makes the following affidavit under the penalty of perjury under both Federal and State laws. I swear as follows to the best of my knowledge:

I'm one of many brothers (Sunni Muslims) inside the Maximum Security prison, complaining how We (as a community) are being treated behind these prison walls. The Department of Corrections is being very racist, very disrespectful towards us brothers (Sunni Muslims) in Islam. Before any situations get worse We (as a community) ask the courts to step in and help us out! The D.O.C. is not giving us Muslims our proper food, the D.O.C. is telling us we can't have congregational prayer outside in the yard together, the D.O.C. is also telling us we can't sit together in the library and study our religon and the Arabic language when this is obligatory in our Islamic faith.

These are important and serious issues that we are dealing with behind prison walls. We are asking for the courts to step on and stop the Department of Corrections from treating us as less than the human beings that we are.

I, Tracey Barros, I.D.#107650, hereby swear to the above affidavit under the penalty of perjury under both Federal and State laws to the best of my knowledge under 28 USCA 1746.

DATE: 2-22-08 [signature]
Signed under the penalty of perjury
[28 USCA 1746]

"AFFIDAVIT IN SUPPORT OF CIVIL ACTION COMPLAINT"

I Terry L. Griffin, inmate of the Rhode Island Department of Corrections, Maximum Security Facility, in Cranston, R. I., of Providence County, hereby makes the following affidavit under the penalty of perjury under both Federal and State laws. I swear as follows to the best of my knowledge:

As long as I've been in this building since 2006, there has always been a conflict with some of the staff. They have time and time again said things about Muslims just to see if we are going to cause any problems. We are a peaceful people no matter what people think. We want the respect that all other religons in here in this building. It would also be nice if they fed us better. Thank you.

I, Terry L. Griffin, I.D.#64469, hereby swear to the above affidavit under the penalty of perjury under both Federal and State laws to the best of my knowledge under 28 USCA 1746.

DATE: 2-24-08

Signed under the penalty of perjury
[28 USCA 1746]

"AFFIDAVIT IN SUPPORT OF CIVIL ACTION COMPLAINT"

I, James Barnes, inmate of the Rhode Island Department of Corrections, Maximum Security Facility, in Cranston, R.I., of Providence County, hereby makes the following affidavit under the penalty of perjury under both Federal and State laws. I swear as follows to the best of my knowledge:

On several occaisons I have expierienced discrimination because I'm a Muslim striving to live a pious life. But how can I when the DOC staff won't allow us to study in the prison population library, calling us a gang!

Islam is a religon and we don't practice hate, that's not allowed: We follow Qur'an and Sunnah (the teachings of the Prophet Muhammad - Please and Blessings Be Upon Him). And the more I view this , I see that we are being treated unfairly. We have D.O.C. staff saying that they are going to break up this Muslim sh*t.

We don't disrespect the rules or regulations here, nor cause problems. We are just looking for our respect as Muslims, and not how the media views us, but we are instead being treated in here as though we are prisoners of war.

I, James Barnes, I.D.# 125674, hereby swear to the above affidavit under the penalty of perjury under both the Federal and State laws to the best of my knowledge under 28 USCA 1746.

DATE 2/22/08

James Barnes
Signed under the penalty of perjury
[28 USCA 1746]

"AFFIDAVIT IN SUPPORT OF CIVIL ACTION COMPLAINT"

I, Alvin Smith, inmate of the Rhode Island Department of corrections, Maximum Security Facility in Cranston, R.I. of Providence County, hereby makes the following affidavit under the penalty of perjury under both Federal and State laws. I swear as follows to the best of my knowledge:

The Holy Qur'an tells Muslims in Surah 5, verses 3-4: "Forbidden to you (for food) are: Dead meat, Blood, the flesh of Swine, and that on which hath been invoked the name other than Allah."

Prayer is the foundation of Islam. We as Muslims must pray five (5) times a day at their stated times. If we as Muslims are out in the prison yard, we are ordered by Allah to pray together in congregational prayer. This also is a part of the religon of Islam.

The Holy Qur'an also tells us Muslims in Surah 62, verse 9: "O You who believe! When you hear the call to Friday

Prayer, hasten to the rememberance of Allah and leave your trading. This is better for you only if you knew it." The Warden here at Maximum Security (A.C.I.) will not allow us to pray in the mosque if the Imam from the outside does not show up. It is a Holy Day for Muslims all over the world, that means we still make the prayer together as ordered by Allah, and our beloved Prophet Muhammad (Peace and Blessings Be Upon Him).

Also per order of Warden Weeden (A.C.I.) Maximum Security, Muslim inmates can no longer gather together coll-ectively as a group in the library (Bldg. #3) for the purpose of teaching, reading and or writing Arabic, and other such studies.

In a Maximum Security Newsletter, distributed in June 2007, page 2, paragraph 2 states:

> "BLDG. #3 RULES:
> The Reading & Law Libraries located in BLDG#3 are not to be used for recreation. They are to be uti-lized for there intended purpose, doing research or reading. Horseplay, loitering or loud and rowdy behavior will not be tolerated..."

Other inmates gather in the library around tables, but when the Muslims have Qur'ans out or read Arabic, now it's a problem. We, as Muslims, do not cause a disturbance and we use the library for its intended purpose.

Not every inmate wants to occupy their time playing games all day, everyday. When you are up in age, you begin to see the true reality and uselessness of wasting time.

The Holy Qur'an tells Muslims in Surah 18, verse 27: "Recite (and teach) what has been revealed to thee of the Book (Qur'an) of thy Lord." This is a command from Allah and the Sunnah (the way and example) of our beloved Prophet Muhammad (Peace and Blessing Be Upon Him).

No other group is being singled our except Muslims.

I, Alvin Smith, I.D.#78916, hereby swear to the above affidavit under the penalty of perjury under both Federal and State laws to the best of my knowledge under 28 USCA 1746.

Date: 02.22.08

Signed under the penalty of perjury
[28 USCA 1746]

"AFFIDAVIT IN SUPPORT OF CIVIL ACTION COMPLAINT"

I, Jack C. Ruffner, inmate of the Rhode Island Department of Corrections, Maximum Security Facility in Cranston, R.I. of Providence County, hereby makes the following affidavit under the penalty of perjury under both Federal and State laws. I swear as follows to the best of my knowledge:

I am a Muslim who is doing a life-sentence, and I feel as though my rights are being violated by the Rhode Island D.O.C.. For example, I am constantly being ridiculed by certain staff members (officers), on a regular basis. Just today, an officer said from his own mouth, "I'm tired of doing sh*t for the Mosque," referring to making copies for Muslim inmates. Some time when I stand in line to recieve my dietary tray at chow, whichever C.O. is at that post will say something very derogatory. Yesterday, the warden told me and a few more of the Muslims that we can't sit together at the same table in the library. Why is it we can't come together in the library and read books together or study about our religon, but other inmates can sit in there together, not read any books, and just talk about foolishness and sports?

My religon requires that I eat foods that are in accordance with Islamic law. The dietary trays that we recieve from the kitchen is nothing less than a mere mockery of what we believe in as practicing Muslims. Instead of giving us the proper meat, they give us cheese on almost all occasions.

Don't get me wrong, we do receive fish portions and beans sometime! But for the most part, I eat so much cheese that I sometime have trouble when I try to have a bowel movement. Like right now, we're locked down, for what I don't know, but because I'm Muslim, this is what they give me to eat for the night: cheese, bread, apple, milk and a small bag of potatoe chips! Every inmate that's not Muslim, instead of cheese and bread, they recieve a chicken patty sandwich.

This is a grave injustice that I and other Muslims inmates continually get subjected to, on an everyday basis.

I Jack C. Ruffner, ID# 90813, hereby swear to the above affidavit under the penalty of perjury under both Federal and State laws to the best of my knowledge under 28 USCA 1746.

Date: 2-22-08

Jack Ruffner
Signed under the penalty of perjury
[28 USCA 1746]

"AFFIDAVIT IN SUPPORT OF CIVIL ACTION COMPLAINT"

I, James Hundley, Plaintiff hereby makes the follwing statement of facts under the penalty of perjury under 28 USCA 1746, both federal and state laws. I swear as follows to the best of my knowledge:

I am a practicing Muslim and am currently in the Maximum Security Facility, in Cranston, Rhode Island.

I am having problems regarding my religion and the food situation.

We're being told that we cant make congregation prayer in the recreational yard. In Islam it's obligatory that we pray wherever we're at when the time for prayer comes in.

We're also being told that we can't congregrate in the reading library to read and learn together. No on else that goes in the reading library was told tat they can no longer congregate in the library to read.

We are also having problems with the food situation. As a Muslim I am not allowed to eat any meat that's not slaughtered in the name of Allah (God) which is "halal" meat. We get beans and cheese on a daily basis.

I feel like my first admendment rights are being violated and I'm being discriminated against because of my religion. I would like for this matter to be addressed by the courts.

I, James Hundley, I.D.# 121405, hereby swear to the above affidavit under the penalty of perjury under both Federal and State laws to the best of my knowledge under 28 USCA 1746.

Date 2-22-08

James Hundley
Signed under the penalty of perjury
[28 USCA 1746]

"AFFIDAVIT IN SUPPORT OF CIVIL ACTION COMPLAINT"

I, Dandridge Catus, inmate of the Rhode Island Department of Corrections, Maximum Security Facility, in Cranston, R.I., of Providence County, hereby makes the following affidavit under the penalty of perjury under both Federal and State laws. I swear as follows to the best of my knowledge:

I am a Muslim at the A.C.I.. I have expierienced unfair treatment that could be construed as harassment from the corrections officers that I feel is due to my religous beliefs. On numerous occasions I have heard derogatory statements about Muslims being directed toward myself and the other Muslims.

On several occasions they have given us the exact same meal for lunch and dinner or the very next day. No one else has to eat the exact same food for both lunch and dinner. We often receive less food than the rest of the population.

Our religon requires us to congregate and pray but we are prevented from doing so yet the rest of the population can congregate in large groups to walk the yard or to sun bathe and no one says a word. This is why I believe the unfair treatment is because of my religous belief.

I, Dandridge Catus, I.D.#126709, hereby swear to the above affidavit under the penalty of perjury under both Federal and State laws to the best of my knowledge under 28 USCA 1746.

Date: 2-22-08

Dandridge Catus
Signed under the penalty of perjury
[28 USCA 1746]

"AFFIDAVIT IN SUPPORT OF CIVIL ACTION COMPLAINT"

I, Omar Austin, inmate of the Rhode Island Department of Corrections, Maximum Security Facility, in Cranston, R.I., of Providence County, hereby makes the following affidavit under the penalty of perjury under both Federal and State laws. I swear as follos to the best of my knowledge:

I would like to voice issues concerning religous discrimination and the blatant excessive use of institutional policy, and the persecution of a single group. We Muslims were ordered not to pray together, a religous right that is obligatory in our religon.

The Muslims are obligated to adhere to our religous duties. Prayer, congregational learning or our religon, etc. This is a daily duty, mandatory for all Muslims around the world. We were told by the A.C.I. that we cannot teach each other about our religon. This violates our freedom of expression of religon. We are protected under the constitution to practice our religon so long as it does not threaten the daily orderly functioning of institutional regulations. Officer Hetu of the A.C.I.-Max made open racist verbal comments and attacks Islam every chance he gets. Any prevention from prayer and religous learning is against our rights.

We connot eat meat that is not in coherence with our religously observed diet. But, we've been forced to eat cheese or beans in every meal. We should be fed halal meat like Jewish prisoners who receive kosher trays.

I, Omar Austin, I.D.# 131428, hereby swear to the above affidavit under the penalty of perjury under both Federal and State laws to the best of my knowledge under 28 USCA 1746.

Date: 2/22/08 Omar Shariff Austin
Signed under the penalty of perjury
[28 USCA 1746]

"AFFIDAVIT IN SUPPORT OF CIVIL ACTION COMPLAINT"

I, Marvin Rubio, inmate of the Rhode Island Department of Corrections, Maximum Security Facility in Cranston, R.I. of Providence County, hereby makes the following affidavit under the penalty of perjury under both Federal and State laws. I swear as follows to the best of my knowledge:

I am a Muslim who is currently incarcerated at the A.C.I. Max. Prison. Since I have been in here, the prison's treatment of myself, in relation to the free excercise of my Muslim faith, has been horrible.

As a Muslim, I am required to follow strict dietary laws. One of the major restictions is that I cannot eat pork, or any other meat that was not slaughtered in accordance with Islamic Law. The A.C.I., though, in accomidating this restriction, will not feed me or any other Muslim any kind of meat; but they instead feed us three (3) slices of cheese, or sometimes nothing at all, when providing Muslims with a meat substitute when the general population is being served meat loaf, chicken , hamburgers, ham, and hot dogs. Occaisonally, the A.C.I. will give us Muslims a cup of beans or some fish as a substitute, but this rarely occurs, happening only a handful of times every month. If it's cost effective for the prison to serve cheese and bread to the Muslims every day, calling that an adequate diet, then

why don't they just that for the rest of the prison population as well.

Muslims are also required to pray five times a day as well, no matter where we are or what we're doing. When I and the other Muslims have made attempts to pray at the prescribed times, whether we be in the gymnasium, library, or cell block, the correctional officers have yelled at us and broken up our prayer, threatening to take us to isolation and discipline us if we continued to pray. Had we have continued to pray, we would've been sprayed with mace, taken to segregation, and kept in isolation for an unknown amount of time. At the same time though, there is a Mosque here in Maximum Security which we could be using to pray in, but the corrections staff will not allow us access to it.

Corrections staff are constantly, on a daily basis, making degrading comments against the Muslims. They call us "terrorists" and say that they're going to "break us up and shut us down." When we congregate in the prison library to discuss our faith and study our religon, the corrections staff will break us up and not allow the Muslims to sit at the same table together.

More and more, everyday, corrections staff are doing this and other things to numerous to describe, to prevent me and all the other Muslims in here from practicing our religon.

The Warden, and the Administration will not help us, and complaints against individual correctional staff go completely uninvestigated.

I, Marvin Rubio, I.D.#122621, hereby swear to the above affidavit under the penalty of perjury under both Federal and State laws to the best of my knowledge under 28 USCA 1746.

Date: 2-22-08

M. Rubio
Signed under the penalty of perjury
[28 USCA 1746]

APPENDIX H

Rhode Island Department of Corrections Foodservice

# Memo

**To:** C. O. Stewards, all securities

**From:** John Rogers

**CC:** A. T. Wall, J. Gadsden, R. Richman, M. Grant, A. Hameed, M. Rigney, M. Bonneau, D. Mathieu

**Date:** January 12, 2007

**Re:** Religious Diets

---

I have recently been advised by the legal staff that we are to provide a protein alternative for the meat portion of the meal when the request is made for religious (Muslim or other) reasons. This is the result of Federal Court rulings that states that a prison is to provide "a diet sufficient to sustain the prisoner in good health..."

The procedure will be for the inmate to submit a request for "no meat" diet. At the window or serving line, the inmate should identify themselves and request the no meat tray. After the inmate is verified as being on the no meat diet list, the tray is to be prepared. Any item containing meat is to be kept off the tray – beef, chicken, sauce, soups, or other. A protein alternative is to be provided. This will consist of cheese, fish, beans, egg salad, or other as directed.

Until the menu can be evaluated and formal changes made, use the attached list of substitutions for Saturday week one and for week two of the current menu cycle. If for some reason you do not have the substitution on hand, give one of the items listed above.

(2)

*Here are the temporary changes for all no meat diets for Saturday week 1 and for week 2 of the current fall/winter menu cycle. Other changes will follow.*

| Saturday | Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|---|
| Week 1 | Week 2 | Week 2 | Week 2 | Week 2 | Week 2 | Week 2 | Week 2 |
| **breakfast**<br>juice<br>pancakes/syrup<br>oleo<br>milk (1)<br>beverage/sugar | **breakfast**<br>juice<br>cereal<br>**fried eggs (3)**<br>bread/oleo<br>milk (1)<br>beverage<br>salt/pepper /sugar | **breakfast**<br>juice<br>French Toast<br>oleo/syrup<br>milk (1)<br>beverage<br>sugar | **breakfast**<br>juice<br>hot cereal<br>hard cooked eggs<br>bread/oleo<br>milk (1)<br>beverage<br>salt/pepper/sugar | **breakfast**<br>juice<br>hot cereal<br>pastry<br>milk (1)<br>beverage<br>sugar | **breakfast**<br>juice<br>cereal<br>hard cooked eggs<br>bread/oleo<br>milk (1)<br>beverage<br>salt/pepper/sugar | **breakfast**<br>juice<br>hot cereal<br>pastry<br>milk (1)<br>beverage<br>salt/ sugar | **breakfast**<br>juice<br>pancakes/syrup<br>oleo<br>milk (1)<br>beverage/sugar |
| **lunch**<br>rolls (2)<br>ketchup/mustard<br>**extra beans**<br>cole slaw<br>fruit<br>beverage | **lunch**<br>soup d'jour<br>pizza<br>salad/dressing<br>frozen ice<br>beverage | **lunch**<br>bean soup/crackers<br>**4 slices cheese**<br>grinder roll/mustard<br>fruit<br>beverage<br>salt/pepper | **lunch**<br>soup d'jour/crackers<br>**vegetarian beans**<br>bulkie roll<br>french fries<br>beverage<br>salt/pepper | **lunch**<br>**egg salad/bun (2)**<br>potato chips<br>salad/dressing<br>fruit<br>beverage<br>salt/pepper<br>ketchup & mustard | **lunch**<br>crackers<br>**tuna salad/**<br>**bulkie roll**<br>lettuce/tom/mayo<br>french fries<br>beverage | **lunch**<br>Manhattan Clam<br>chowder/crackers<br>grilled cheese sand(2)<br>onion rings<br>3 bean salad<br>beverage<br>salt/pepper | **lunch**<br>**rolls/ cheese**<br>**slices (4)**<br>french fries<br>cole slaw<br>mustard/ketchup<br>fruit<br>beverage |
| **supper**<br>**baked fish**<br>rice<br>onion-pepper)<br>bread/oleo<br>milk (1)<br>salt/pepper | **supper**<br>**vegetarian**<br>**beans**<br>mashed potatoes<br>cabbage/carrots<br>italian bread/oleo<br>milk (1)<br>salt | **supper**<br>pasta aglio eolio<br>(w/ vegetable stock/<br>oil/garlic)<br>salad/dressing<br>Italian bread/oleo<br>milk (1)<br>salt/pepper | **supper**<br>**baked fish**<br>baked potato<br>corn<br>Italian bread/oleo<br>fruit<br>milk (1)<br>salt/pepper | **supper**<br>fish/tartar sauce<br>mashed potatoes<br>green beans<br>bulkie roll<br>milk (1)<br>salt/pepper | **supper**<br>**vegetarian**<br>**beans**<br>rice<br>carrots<br>bread/oleo<br>fruit<br>milk (1)<br>salt/pepper | **supper**<br>pasta primavera<br>with beans<br>(vegetable stock)<br>salad/dressing<br>Italian breadbread/oleo<br>fruit<br>milk (1)<br>salt/pepper | **supper**<br>**vegetarian**<br>**beans**<br>rice<br>bread/oleo<br>milk (1)<br>salt/pepper |

revised 1/21/07

APPENDIX I

1

# RHODE ISLAND DEPARTMENT OF CORRECTIONS
# POLICY AND PROCEDURE

| | | | |
|---|---|---|---|
| | POLICY NUMBER: 16.05-1 DOC | EFFECTIVE DATE: 06/07/04 | PAGE 1 OF 3 |
| | REPEALS: 16.05 DOC | DIRECTOR: Please use BLUE ink. Ashbel T. Wall II | |
| SECTION: FOOD SERVICE | | SUBJECT: MENU PLANNING | |
| AUTHORITY: Rhode Island General Laws (RIGL) § 42-56-10 (22), Powers of the director | | | |
| REFERENCES: ACA Standard #'s 4297, Dietary Allowances; 4298, Menu Planning; National Academy of Science Food and Nutrition Board's Recommended Dietary Allowances; RIDOC policy #'s 18.45-1 Diet; 26.01-2 DOC, Religious Programs and Services | | | |
| INMATE / PUBLIC ACCESS? | X YES | | |
| AVAILABLE IN SPANISH? | X NO | | |

I. **PURPOSE:**

To ensure menus are planned in advance and that all aspects of food nutrition, presentation, seasonal adjustments, as well as a rotating cycle, are considered in the menu planning process.

II. **POLICY:**

It is the responsibility of the Associate Director of Food Services, Rhode Island Department of Corrections (RIDOC), to ensure menus:

A. are planned in advance;

B. are reviewed and approved by a licensed Dietitian;

C. are reviewed with the Administrator of Physical Resources or designee, relative to anticipated changes and associated timeframes;

D. meet the National Academy of Science Food and Nutrition Board's Recommended Dietary Allowances; and

E. utilize tested recipes.

III. **PROCEDURE:**

A. Menu Planning

1. Menu planning requires input from the Associate Director of Food Services, Dietitian, Supervisor of Food Services, and Correctional Officer Stewards.

2. Aspects of the menu to be considered include:

a. nutritional value;

b. quality;

c. cost;

d. required equipment;

e. preparation time and methods;

NOTE: The following should be considered during the planning and preparation of all meals: food flavor, texture, temperature, appearance, and palatability.

f. current inventory as it relates to scheduled changes in the menu.

(1) The Administrator of Physical Resources or designee notifies the Associate Director of Food Services or designee at least twice a year of excess inventory items not being served on current or upcoming proposed menu cycles.

B. Menu Cycle and Rotation

1. There is a twice-a-year menu cycle (spring/summer and fall/winter).

2. The menu is adjusted to reflect seasonal food offerings.

3. The menu is rotated every five (5) weeks, and reviewed quarterly by the Dietitian to determine whether adjustments are necessary.

C. Menu Format

1. All menus should meet the National Academy of Sciences Food and Nutrition Board's Recommended Dietary Allowances.

2. Tested recipes should be utilized and adjusted for a yield appropriate for the facility's size.

3. Emergency substitutions in meals actually served are noted, long-term substitutions are made in consultation with and approved by the Dietitian, and equal nutritional value is maintained.

a. Any menu deviation must be approved by the Associate Director of Food Services or the Supervisor of Food Services prior to the meal's being prepared.

(1) If the Associate Director of Food Services and the Supervisor of Food Services are unavailable and an emergency exists (e.g., power outage) where the menu item must be changed, the Correctional Officer Steward notifies the aforementioned parties and submits documentation of the incident to the aforementioned parties as soon after the meal as feasible.

4. All menus are certified for content by a licensed Dietitian.