UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

ISLAMIC SUNNI UMMAH, ET AL. DECLARATION

VS. CIVIL ACTION NO. 08-094ML

ASHBEL T. WALL, ET AL. Corey A. Day, et al.
NAME OF DECLARANT

SWORN DECLARATION

Corey A. Day, et al., hereby declares the following under the penalty of perjury, pursuant to 28 U.S.C. § 1746:

Ashbel T. Wall, II, is the Director of the Rhode Island Department of Corrections. He is legally responsible for the overall operation of the Department and each institution under its jurisdiction, including the Maximum Security Facility. He is legally responsible under General Laws of the State of Rhode Island and the Department of Correction's Code of Ethis policy, for protecting the civil and legal rights of the inmate populati-on at the Department of Corrections.

Director Wall is responsible for supervising Warden Weeden, Deputy Warden Kettle, Roberta Richman, and John Rogers: all named Defendants in the above action, as well as all Department of Corrections employees.

Director Wall is responsible for the implementation of the Department of Correction's Religous Programs Policy, Code of Ethics policy, Diet Policy, and Menu Planning Policy. It is being alleged that Director Wall failed to implement these policies properly resulting in the following civil rights violat-ions against the named Plaintiffs:

1. Denial of the Right to pray outside of cells.

2. Denial of the Right to pray inside of the prison mosque.

3. Denial of the Right to pray in congregation.

4. Denial of the Right to consume a relgous diet consisting of Halal meat.

5. Denial of the Right to have meals evaluated by a licensed dietician.

6. Denial of the Right to congregate and conduct religous study.

7. Denial of the Right to wear a religious Kufi.

8. Practicing a policy of forced vegetarianism upon the Plaintiffs,

9. Denial of the Right to consume meals that meet adequate nutritional guidelines.

On multiple occasions, Director Wall was informed in writing by the Plaintiffs that the above named violations were taking place against the Plaintiffs, however Director Wall acted with a complete indifference to the Plaintiffs rights and failed to act to remedy the situation, amounting to gross-negligence.

Director Wall failed to promulgate rules to protect the constitutional rights of the Muslim inmate population, as was his duty under the law. The promulgation of rules to protect the rights of the Muslim population is an issue that has remained silent for decades. At no time in the history of the institution has the Sunni Muslim population ever had such problems as praying and congregating for religous study. Only over the past few years has the Department (i.e. Defendants) sought to limit the exercise of the Plaintiffs' religon. Consequently, injuctinve relief is

sought against Director Wall and all the other named Defendants, because they are the ones who have either directly prohibited the Plaintiffs' from exercising their religon or they are the only persons within the Department of Correcitons who have the ability to end the Constitutional violations if so ordered.

Director Wall is legally responsible for supervising the other named Defendants. Since all policies, practices, and administrative procedures are set by and under the control of the Director of Corrections, and since he set no policies to safeguard inmates against unconstitutional conduct on the part of his subordinates, he had to be held responsible. (Ferola v. Moran , 622 F. Supp. 814 (D.R.I.1985). Rhode Island General Law 42-56-10, also states the following:

"In addition to exercising the powers and performing the duties, which are otherwise given to him or her by law, the director of the deparment of corrections shall:

[...](3) Establish and enforce standards for all state correctional facilities;

(4) Supervise and/or approve the administration by the assistant director of the department;

[...](6) Direct employees in the performance of their official duties;

[...](9) Determine the methods, means, and personnel by which those operations of the department are to be conducted;

[...](15) Investigate grievances and inquire into alleged misconduct within the department;

[...](22) Make and promulgate the necessary rules and regulations incident to the exercise of his or her powers and the performance of his or her duties, including, but not limited to,

rules and regulations regarding nutirition, sanitation, safetey, discipline, recreation, religous services, communication, and visiting priveledges, classifi cation, education, training, employment, care, and custody for all persons commited to correctional facilities."

The Director's responsibilities under the law are unequivocal. It cannot be argued that the law does not vest the sole responsibility upon the Director to protect the rights of the inmate population, investigate misconduct on the parts of his subordinates, and supervise and direct correction's employees.

Defendant Wall failed to implement policies to prevent the aforementioned deprivation of plaintiffs' rights. Defendant Wall was grossly negligent in managing those employees, the other named Defendants, when they directly prohibited the Plaintiffs from

exercising the aforementioned rights, or were likewise negligent in implementing those policies which protected those rights. Defendant Wall knew/learned of the violation of the Plaintiffs' aforementioned rights, but failed to act to prevent the continued violation of those rights.

At the time that each of the aforementioned violations began to occur, written notice was sent to Director Wall by myself, and several other plaintiffs. Subsequently, however,

no action was taken by Director Wall.

Defendant James Weeden, Warden of the Maximum Security Facility, is the subordinate of Director Wall. He is legally responsible for the operation of the Maximum Security Facility, and for the welfare of all the inmates of the prison.

Warden Weeden specifically told all of the named Plaintiffs that they were not allowed to pray outside of their cells. That they were not allowed to pray in congregation. That they were not allowed to access the prison mosques. That they were not allowed to wear their religous kufis. That they not allowed to eat halal meat. That they were not going to have their meals reviewed by a licensed dietician. That they were not allowed to congregate together for religous study. And that they were to eat the food given to them, or nothing at all (forced vegetarianism).

All of these words cames directly form Warden Weeden. He was infomred that these actions amounted to a constitional violations on his part, however he failed to do anything to remedy the situation. He told the plaintiffs that if we attempted to pray outside of our cells, in congregation, or congregate together for religous study, we would be taken to segregation (disciplinary confinement).

Deputy Warden Kettle is the Deputy of the Maximum Security Facility. He is legally responsible for the operation of the Maximum Security Facility, in conjuction with Warden Weeden. Before any of the plaintiffs requests to pray outside of their cells, eat halal meat, congregate, access the mosque, etc. were taken to Warden Weeden, they were first taken to Deputy Kettle who denied them as well.

Deputy Warden Kettle specifically told all of the named Plaintiffs that they were not allowed to pray outside of their cells. That they were not allowed to pray in congregation. That they were not allowed to access the prison mosque. That they were not allowed to wear their religous kufis. That they were not allowed to eat halal meat. That they were not allowed to congre-

gate for religous study, that they were not going to have their meals reviewed by a licensed dietician, and that they were to eat the food given to them, or eat nothing at all (forced vegetarianism).

All of these words came directly from Deputy Warden Kettle. He was informed that these action amounted to a violation of the Plaintiffs' rights, however he failed to do anything to remedy the situation, and told the Plaintiffs to take the matter up with the courts. He told the Plaintiffs, just as Warden Weeden did, that if we attempted to pray outside of our cells, congregate, or pray in congregation, we would be taken to segregation.

Assistant Director of Programs, Roberta Richman, is assinged to the oversight of each institution under the jurisdiction of the Rhode Island Department of Corrections, including the Maximum Security Facility, and within the overall oversight of the capacities of her position. She is repsonsible for the implementation of the various provisions of the Rhode Island Department of Correction's Religous Programs Policy (DOC 26.01). This includes the various policy provisions that the Plaintiffs contest, including access to the prison mosques, congregational prayer, wearing of religous dress, and consumption of a religous diet. It is claimed that Director Richman was negligent, careless, and indifferent to protecting the rights of the Sunni Muslim population in failing to implement the various provisons of the Deparment of Correction's policies.

Assistant Director Richman knew that Muslim inmates were to be provided with a religous diet that was consistent with the Muslim faith (See: appendix E of the complaint and

appendix H). However, Richman failed to implement the Federal Court ruling and DOC policy. In fact, the Muslim inmates of Maximum Security were never informed for almost a year that they were entitled to a religous diet, yet all other groups of Muslims in all other facilities of the Department of Correcti-ions were informed.

Assistant Director Richman denied the Plaintiffs the right to consume a religous diet consisting of halal meat, the right to pray in congregation, the right to pray outside of plaintiffs' cells, the right to access the prison mosque, and the right to wear their religous kufi. Multiple letters were sent by the plaintiffs to Assistant Director Richman informing her that the Plaintiffs were not being allowed to exercise the aforementioned rights, however Richman failed to act. Department of Corrections Code of Ethics Policy says that staff shall protect the civil and legal rights of the inmate population. Assistant Richman failed to so such.

Assistant Director John Rogers is the Director of the Rhode Island Department of Corrections' Food Services. He is assigned to the oversight of all the food services provided to the inmate population, including the policy requirements that co-ver the issues of nutrition, preperation, and accomidation of religous diets. It is claimed that Director Rogers was negili-gent, careless, and indifferent to protecting the rights of the Sunni Muslim Population in failing to implement the various provisions of the Department of Correction's Religous Programs, Policy, Diet Policy , and Menu Policy, as well as the Federal Co-urt ruling mentioned in the complaint (see appendix h of

the complaint.

Assistant Director John Rogers knew that Muslim inmates were to be provided with a religous diet that was consistent with the Muslim faith (SEE: appendix E and H of the complaint). However, Rogers failed to implement the Federal Court ruling and DOC policy. In fact, the Muslim inamtes of Maximum Security were never informed for almost a year that they were entitled to a religous diet, yet all other Muslims in the other facilities of the Department of Corrections were informed.

Assistant Director Rogers denied the Plaintiffs the right to consume a religous diet consisting of halal meat, the right to have the Plaintiffs' diet reviewed by a licensed dietician, the right to have meals that met adequate dietary standards, and the right to have meals that were based upon tested recipies.

Multiple letters were sent by the Plaintiffs to Assistant Director John Rogers informing him that the Plaintiffs were not being provided with meals that were in conformity with their religous beliefs, or that were being provided in accordance with the Department of Correction's Religous Programs Policy. Rogers was informed in writing that the meals that the Plaintiffs were being provided were not being evaluated by a licensed dietican, that they were not utilizing tested recipies as required by policy, and that they were not meeting adequate nutritional guidelines. Assistant Director Rogers, however, failed to take action to remedy the situation or to take proper steps to see that the Department of Correction's Policy, and the Federal Court ruling were properly put into place.

All of the above named Defendants are in fact systematically depriving all Muslim inamtes of their First Amendment rights of Freedom of Expression and Free Exercise of Religon. As is evidenced in the complaint and various appendicies, there is undisputable evidence that the above named Defendants knew what their responsibilities were under the law, they knew that they had a duty to protect the civil and legal rights of the offender population, but yet they completely failed to act.

Aside from the failure of the Defendants to properly implement various Department of Corrections policies which seek to protect the rights of the offender population; the Defendants also failed to promulgate rules and regulations that specifically deal with the various religous practicies with which Muslim inmates partake. In fact, this issue remained silent for decades. At no time in the history of this institution has the Sunni Muslim population ever had such problems as Praying and congregating for religous study. Until recent years, the Department (i.e. Defendants) sought to limit the exercise of the Plaintiffs' religon. Consequently, injunctive relief is sought against these named Defendants in particular because they are the ones who have either directly prohibited the Plaintiffs' from free exercise of their religon, or they are the only person within the Department of Corrections who have the ability to end the constitutional violations if so ordered.

The Department of Correction's Code of Ethics Policy (3.14-1) clearly states that corrections staff shall protect the civil and legal rights of all members of the inmate population. The named Defendants cannot claim that they did not know that they had a responsibility to protect the civil and

legal rights fo the offender population, including Sunni Muslim inmates, of whomthere are several hundred within this institution. As evidenced in the complaint and declaration, Defendants knew, or should have known, that various constitutional violations were taking place against the Muslim inmate population.

All of the Defendants actions were clearly motivated by a deliberate indifference to the Plaintiffs rights, as the Federal and State laws in this matter are clearly established, as well as the applicative Federal and State Court rulings and the Department of Correction's own policies. In fact, Director Wall's signature in affixed to the heading of all policy sections. Ignorance cannot be claimed in the matter as the law and policies are clearly established. This constitutes reckless and callous indifference to the Plaintiffs' rights.

The very same rights which Muslims are denied, all other religous groups are granted. Jewish inmates are allowed specially ordered Kosher trays with meat. Christians and Hindus are allowed to wear their various religous decorum. All other religous groups are allowed to congregate and study and pray. Even some groups are allowed to gather together and practice withcraft. Even general inmates are allowed to congregate together for recreation and idle time. Many are provided with aluminum base ball bats and other similar objects, and they are allowed to group together in amounts of 20 or more. All of this without being labeled a security risk . But, when the Muslims gather together in small groups of 4 or 5 to read a book, we are the only ones that are denied this right and are labeled a security risk!

As evidenced in the complaint and declaration and the attached exhibits, the Defendants are clearly singling out the Sunni Muslim population. Not even other Muslim sects are being singled out; only the Sunni Muslims of Maximum Security.

The Defendants have attempted to provide the Plaintiffs with a "protein alternative", however this is not in conformance with the plaintiffs' religous beliefs. We are not vegetarians, and it is obligatory for us to consume halal meat. Even if we could somehow consume the "protein alternative" that the Defendants were ordered to provide the Muslim population, the Defenants' don't even provide that, except on very rare occasions.

I declare under the penalty of perjury, pursuant to **28 U.S.C. § 1746**, that the foregoing is true and correct to the best of my knowledge. Executed at Cranston, RI on:

8/29/2008
DATE

Signed Under the Penalty of Perjury [28 U.S.C. § 1746]